UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RACHEL WALLACE,

                     Plaintiff,

v.

                     1:12-CV-1699
                     (GTS/RFT)

STEPHANIE STANTON; and KATHY CALTA;

                     Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

SMITH HOKE, PLLC                                      JOHN J. HOKE, ESQ.
  Counsel for Plaintiff
18 Corporate Woods Boulevard, Suite 202
Albany, NY 12211

HUSCH BLACKWELL LLP                                   DANIEL P. JAFFE, ESQ.
  Counsel for Defendants
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this labor action filed by Rachel Wallace ("Plaintiff") against Stephanie Stanton and Kathy Calta ("Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (Dkt. No. 10.) For the reasons set forth below, Defendants' motion is denied without prejudice, with leave to renew after discovery is completed.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims Against Defendants

Generally, liberally construed, Plaintiff's Complaint asserts the following two claims against Defendants, who were two high-ranking employees of Plaintiff's employer, Vertis Communications, Inc. ("Veris"), during the time in question: (1) a claim that Defendants violated New York Labor Law § 198 by not paying Plaintiff for approximately 2,278.08 hours of overtime at a rate of 1½ times her regular rate pursuant to 12 N.Y.C.R.R. § 142-2.2 between approximately April 11, 2008, and January 23, 2012 (amounting to $81,981.28 in unpaid compensation); and (2) a claim that Defendant violated the Fair Labor Standards Act by not paying Plaintiff for approximately 2,278.08 hours of overtime at a rate of 1½ times her regular rate pursuant to 29 U.S.C. § 207(a)(1). (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Generally, these two claims are based on the following factual allegations: (1) Vertis is a foreign business corporation that offered advertising and marketing services throughout the United States during the time in question; (2) Defendant Stanton (as Vertis' Vice President of Media Relations) and Defendant Calta (as Vertis' Chief Marketing Officer) are liable to Plaintiff as her "joint employer" (along with Vertis) during the time in question, by exercising direct operational control over the terms and conditions of Plaintiff's employment; (3) for example, Defendant Stanton (a) directly supervised all of the daily functions of Plaintiff's employment (including approving her work schedule, approving her leave, and ratifying her attendance), (b) had the authority to hire and fire Plaintiff, (c) approved the compensation arrangement for Plaintiff, (d) conducted monthly "forecast reviews" outlining the monthly salaries and wages paid to Plaintiff, (e) directly spoke with Plaintiff throughout the day for purpose of requesting

assistance in the discharge of her duties, (f) had access to all of Plaintiff's personnel files, (g) directly controlled Plaintiff's work schedule, and (h) reviewed and approved the terms of Plaintiff's compensation; (4) moreover, Defendant Calta (a) had the authority to hire and fire Plaintiff, (b) controlled Plaintiff's salary, (c) had access to all of Plaintiff's personnel files, (d) determined the employment policies regarding Plaintiff's employment, and (e) was aware of the change in Plaintiff's employment status from non-exempt to exempt on April 11, 2008, and back to non-exempt on January 23, 2012; and (5) from approximately April 11, 2008, to January 23, 2012, Plaintiff was eligible for overtime compensation working an average of 11.2 hours of overtime a week. (*Id.*)

Familiarity with the remaining factual allegations giving rise to Plaintiff's claims against Defendants is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

### B. Parties' Briefing on Defendants' Motion

Generally, in support of their motion to dismiss, Defendants assert the following three arguments: (1) Plaintiff's claims against Defendants should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), because Plaintiff's Complaint has failed to make a prima facie showing, pursuant to N.Y. C.P.L.R. § 302(a)(1) of New York State's long-arm statute, that (a) Defendants transacted business within New York State, (b) the causes of action arise from that business activity, and (c) an exercise of jurisdiction would offend traditional notions of fair play and substantial justice; (2) moreover, to the extent that Plaintiff's Complaint relies on Defendants' relationship to Vertis, Plaintiff's Complaint has failed to make a prima facie showing of personal jurisdiction against Defendants (based on Vertis's contact with New

York), because Plaintiff's Complaint does not allege facts plausibly suggesting that Defendants directed Vertis's conduct in New York State for Defendants' own personal benefit; and (3) in the alternative, Plaintiff's claims against Defendant Calta should be dismissed for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), because the Summons and Complaint were left at Calta's residence with a representative of Calta's cleaning service, who does not reside there, and who cannot be shown by Plaintiff as being an agent authorized by law or appointment to accept service of process on behalf of Plaintiff. (*See generally* Dkt. No 10, Attach. 1 [Defs.' Memo. of Law].)

Generally, in response to Defendants' motion, Plaintiff asserts the following three arguments: (1) Defendants are subject to New York State's long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(1) because (a) they transacted business in New York State, (b) Plaintiff's claims arose out of those contacts, and (c) an exercise of jurisdiction would not offend traditional notions of fair play and substantial justice; (2) in the alternative, personal jurisdiction is appropriate under an agency theory, applicable where (as here) Defendants directed the corporation's activities in New York State, and those activities were for Defendants' personal benefit (as exemplified by Plaintiff's affidavit testimony that Defendant Stanton relied on Plaintiff to handle all of her travel arrangements, arrange her schedule, and constantly assist her in special projects); and (3) Defendant Calta's argument that Plaintiff's claims against him should be dismissed for insufficient service of process are unfounded because, regardless of whether Defendant Calta was served in accordance with the laws of Maryland, she was served in accordance with the laws of New York, as permitted by Fed. R. Civ. P. 4(e)(1), because (a) the Summons and Complaint was served upon a non-resident of suitable age and discretion at

Defendant Calta's abode, and (b) the Summons and Complaint was then promptly mailed to the address. (*See generally* Dkt. No. 12 [Plf.'s Opp'n Memo. of Law].)

Generally, in reply to Plaintiff's response, Defendants assert the following three arguments: (1) Plaintiff has not established that either Defendants transacted business in the State of New York because (a) Plaintiff has failed to show that Defendants' travels to New York for one or two meetings relating to their own employment with Vertis was for the purpose of *transacting business* in New York, and (b) Plaintiff has failed to show that Defendant Stanton's communications with Plaintiff by phone and e-mail were for the purpose of transacting business *in New York*; (2) even if Defendants did transact business in the State of New York, Plaintiff has failed to establish that her state and federal wage claims arose from the alleged transaction of business (as exemplified by Defendants' affidavit testimony that they were not involved in any decisions regarding Plaintiff's classification as an "exempt" or "non-exempt" employee); and (3) Plaintiff has failed to make a prima facie showing of personal jurisdiction over Defendants based on Vertis's contacts with the State of New York because (a) Defendants' purported control over *Plaintiff* does not establish the requisite control over *Vertis* (much less their control over Vertis in New York State, giving rise to Plaintiff's claims), and (b) Defendant Stanton's reliance on Plaintiff had little if anything to do with the personal benefit(s) derived by Defendants from their activities in New York State. (Dkt. No. 16 [Defs.' Reply Memo. of Law].)

## II.  RELEVANT LEGAL STANDARD

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis." *Harris v. Ware*, 04-CV-1120, 2005 WL 503935, at *1 (E.D.N.Y. Mar. 4, 2005). "First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits." *Harris*, 2005 WL

503935, at *1 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 [2d Cir. 1999]). "Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, the service of a summons establishes personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *Id*. (citation omitted). "Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights." *Id*. (citation omitted). These due process rights require that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Aldinger v. Segler*, 04-CV-4405, 2005 WL 2591958, at *2 (S.D.N.Y. Oct. 13, 2005) (internal quotation marks and citation omitted). Unless a court conducts "a full-blown evidentiary hearing," the plaintiff need only make "a prima facie showing of jurisdiction through its own affidavits and supporting materials to survive a motion to dismiss under Rule 12(b)(2)." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted). What this means is that, "prior to discovery, a plaintiff may defeat a jurisdiction-testing motion by pleading in good faith, . . . legally sufficient allegations of jurisdiction." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted). However, where a defendant "rebuts [a plaintiff's] unsupported allegations with direct highly specific, testimonial evidence regarding a fact essential to jurisdiction–and plaintiff[] [does] not counter that evidence–the allegation may be deemed refuted." *MEE Direct LLC v. Tran Source Logistics, Inc.*, 12-CV-6916, 2012 WL 6700067, at *2 (S.D.N.Y. Dec. 26,

2012).  Having said that, if the plaintiff's complaint and affidavits conflict with the defendant's affidavits, the district court must construe all reasonable inferences in the plaintiff's favor.  *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

### III. ANALYSIS

#### A. Whether Plaintiff Has Made a Prima Facie Showing of Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1) of New York's Long-Arm Statute

After carefully considering the matter, the Courts answers this question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law.  *See, supra,* Part I.B. of this Decision and Order.  To that rationale the Court would add only the following analysis.

Because the Fair Labor Standards Act is silent as to personal jurisdiction, Fed. R. Civ. P. 4(k)(1)(A) permits the court to exercise personal jurisdiction over defendants who are subject to jurisdiction under the laws of the forum state.  *Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 223 (2d Cir. 1963).  New York's long-arm statute authorizes personal jurisdiction over a non-domiciliary defendant who "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). Generally, a non-domiciliary transacts business under C.P.L.R. § 302(a)(1) when "he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

Moreover, to confer jurisdiction under C.P.L.R. § 302(a), the cause of action must "arise from" the specific New York business transaction. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1998).  Generally, a cause of action "arises from" a defendant's New York contacts if the contacts are "substantially proximate to the allegedly unlawful acts." *Int'l*

7

*Healthcare Exch. v. Global Healthcare Exch., LLC.*, 470 F. Supp. 2d 345, 358 (S.D.N.Y. 2007) (citations omitted); *Kreutter*, 71 N.Y.2d at 467 (explaining that C.P.L.R. § 302[a] requires a "substantial relationship between the transaction and the claim asserted).

Finally, due process is satisfied, and an assertion of personal jurisdiction through a long-arm statute is valid, if the defendant has sufficient minimum contacts with the forum state such that allowing the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### 1. Whether Defendants Have Transacted Business Within New York State

Based on the factual allegations asserted and evidence adduced thus far, the Court finds that Defendants have transacted business within New York State. Defendant Stanton directly supervised the New York office, while Defendant Calta established the salaries of all the employees in that office, defined their employment titles, and supervised one employee there (Steve Anderson). (Dkt. No. 1, at ¶¶ 2-6, 11-12 [Plf.'s Compl.]; Dkt. No. 12, Attach. 1, at ¶¶ 17, 34-36 [Wallace Aff.].) As a result, Defendant Stanton regularly visited the New York office (near where her parents owned a home), while Defendant Calta traveled to that office approximately two times during Plaintiff's tenure there. (Dkt. No. 12, Attach. 1, at ¶¶ 31, 32, 37 [Wallace Aff.].) Moreover, Defendant Stanton constantly called and emailed Plaintiff at her home or car in New York, or in the New York office. (Dkt. No. 12, Attach. 1, at ¶¶ 26, 28 [Wallace Aff.].)

With regard to Defendants' argument that Plaintiff has failed to show that Defendants' contacts with New York State were for the specific purpose of *transacting business in New York State*, the Court has trouble accepting that argument (at least based on the current record). For

example, the Court notes as follows: (1) among her other duties, Plaintiff coordinated the daily schedule of Defendant Stanton; (2) Defendant Stanton served as the Vice President of Media Services; (3) the media division was housed or based in the New York office; (4) while Defendant Stanton's predecessors had been based in the New York office, Stanton was permitted to work from one of Vertis' offices in South Carolina; (5) Defendant Stanton reported to Vertis' Chief Marketing Officer, Defendant Calta; and (6) Defendant Calta directly supervised one employee in the New York office (Steve Anderson). (Dkt. No. 12, Attach. 1, at ¶¶ 1, 5, 10, 17, 19, 20, 33 [Wallace Aff.].)

### 2. Whether Plaintiff's Wage Claims Arise from Defendants' Contacts with New York State

Moreover, based on the factual allegations asserted and evidence adduced thus far, the Court finds that Plaintiff's wage claims arise from Defendants' contacts with New York State. During the relevant time period, Defendants reviewed Plaintiff's compensation. For example, Defendant Stanton (a) approved the compensation arrangement for Plaintiff, (b) conducted monthly "forecast reviews" outlining the monthly salaries and wages paid to Plaintiff, and (c) reviewed and approved the terms of Plaintiff's compensation. (Dkt. No. 1, at ¶ 11 [Plf.'s Compl.]; Dkt. No. 12, Attach. 1, at ¶¶ 23-24 [Wallace Aff.].) Moreover, Defendant Calta (a) controlled Plaintiff's salary, and (b) was aware of the change in Plaintiff's employment status from non-exempt to exempt on April 11, 2008, and back to non-exempt on January 23, 2012. (Dkt. No. 1, at ¶ 12 [Plf.'s Compl.]; Dkt. No. 12, Attach. 1, at ¶ 34 [Wallace Aff.].) Finally, Defendant Stanton participated in the meeting on January 23, 2012, in which she (along with the Human Resources Manager, Karen Casper) advised Plaintiff that she was being reclassified as "non-exempt" because of a "new law," such that she would once again be eligible to receive

overtime pay. (Dkt. No. 12, Attach. 1, at ¶¶ 12-14 [Wallace Aff.].) After that meeting, when Plaintiff told Defendant Stanton she was upset that she would not be paid for the overtime she had worked over the previous years, Defendant Stanton replied that she would "see what she could do." (*Id*. at ¶ 16.)

Granted, Plaintiff's wage claims arise from only *some* of Defendants' contacts with New York State. More specifically, Plaintiff's wage claims arise from her work at Vertis between approximately April 11, 2008, and January 23, 2012. The problem is that Plaintiff lived in Florida until June 2009 (when she returned to New York). (Dkt. No. 12, Attach. 1, at ¶ 6 [Wallace Aff.]; Dkt. No. 10, Attach. 2, at ¶¶ 10, 11, 12 [Stanton Aff.].)[1] More important, Defendant Calta did not become Vertis' Chief Marketing Officer until September 2009. (Dkt. No. 10, Attach. 3, at ¶ 4 [Calta Affi.].) Similarly, Defendant Stanton did not become Plaintiff's supervisor until November 2009. (Dkt. No. 10, Attach. 2, at ¶¶ 4, 9 [Stanton Aff.].) However, these facts do not appear to render Plaintiff's pre-fall 2009 wage claims untimely.[2] What these facts appear to do, however, is limit, if not eliminate, the liability of Defendants for that portion of Plaintiff's wage claim(s) based on acts occurring before the fall of 2009. Because such a challenge of lack of personal involvement does not appear to be jurisdictional in nature, the Court need not, and does not, address it in this Decision and Order. *Cf. Rahman v. Shiv Darshan, Inc.*, 12-CV-3457, 2013 WL 654189, at *4 (E.D.N.Y. Feb. 22, 2013) (analyzing lack-

---

[1] Plaintiff telecommuted to work in the New York office between August 2007 and June 2009. (Dkt. No. 12, Attach. 1, at ¶ 6 [Wallace Aff.]; Dkt. No. 10, Attach. 2, at ¶ 10 [Stanton Aff.].)

[2] This is because, "for the purposes of establishing the statute of limitations under the [Fair Labor Standards Act], a new cause of action accrues with each payday following an allegedly unlawful pay period." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006); *accord, Hosking v. New World Mortg., Inc.,* 602 F. Supp. 2d 441, 446 (E.D.N.Y. 2009).

of-personal-involvement defense asserted by supervisor to Fair Labor Standards Act claim under failure-to-state-a-claim analysis pursuant to Fed. R. Civ. P. 12[b][6]).[3]

### 3. Whether an Exercise of Jurisdiction Would Comport with Traditional Notions of Fair Play and Substantial Justice

Finally, with regard to the due process analysis, Defendants' contacts within New York were so extensive that Defendants should have reasonably anticipated being brought into court in New York. For example, approximately 60 percent of Defendant Stanton's time was spent supervising the New York office, which (combined) employed more than twice the number of employees than did the three other offices she supervised. (Dkt. No. 12, Attach. 1, at ¶¶ 17, 18, 21 [Wallace Aff.].) As a result, Defendant Stanton regularly visited the New York office. (*Id*. at ¶ 31.) Defendant Calta established the salaries of all the employees in the New York office, defined their employment titles, and directly supervised one employee there (Steve Anderson). (*Id*. at ¶¶ 34-36.) As a result, Defendant Calta traveled to the New York office approximately two times during Plaintiff's tenure there, in order to meet with the managers in the New York office and review their work. (*Id*. at ¶ 37.)

For all of these reasons, the Court finds that, based on the factual allegations asserted and evidence adduced thus far, Plaintiff has made a prima facie showing of personal jurisdiction over Defendants under N.Y. C.P.L.R. § 302(a)(1) of New York's long-arm statute. However, because the Court's finding is based on the above-described factual allegations and evidence, the Court

---

[3] The Court notes that, while it has found cases addressing whether a district court possesses personal jurisdiction over claims other than the claim giving rise to the court's personal jurisdiction, it has not found cases addressing whether a district court possesses personal jurisdiction over a part of a claim other than the part of the claim that gives rise to the court's personal jurisdiction. *See, e.g., Cronin v. Washington Nat;l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993); *Mack Trucks, Inc. v. Arrow Aluminum Castings Co.*, 510 F.2d 1029 (5th Cir.1975).

denies this part of Defendants' motion only without prejudice, with leave to renew after discovery is completed.

> **B. Whether, in the Alternative, Personal Jurisdiction Is Appropriate Under an Agency Theory (Because Defendants Directed Vertis's Activities in New York State, and Those Activities Were for Defendants' Personal Benefit)**

After carefully considering the matter, the Courts answers this question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law. *See, supra,* Part I.B. of this Decision and Order. To that rationale the Court would add only the following analysis.

In arguing that Plaintiff has been unable to make a prima facie showing that Defendants directed Vertis's conduct in New York State, Defendants rely on *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323-24 (S.D.N.Y. 1998) (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 [N.Y. 1988]). However, *Kreutter* went on to explain that, in order to satisfy jurisdiction under the agency theory, a plaintiff must show that the defendant exercised "some control" over the corporation in the matter. *Kreutter*, 71 N.Y.2d at 467. The defendant need not control the entire corporation, but only be the "primary actor" in the matter. *Id*; *Karabu Corp.*, 16 F. Supp. 2d at 323.

Granted, here, Defendants have adduced evidence that (1) in their positions at Vertis, they do not have authority make decisions regarding "exempt" or "non-exempt" job classifications of Vertis employees, and (2) they were not involved in any decisions regarding Plaintiff's "exempt" or "nonexempt" job classification. (Dkt. No. 10, Attach. 2, at ¶¶ 12, 15-16 [Stanton Aff.]; Dkt. No. 10, Attach. 3, at ¶¶ 10-11 [Calta Aff.].) However, Plaintiff has adduced evidence that (1) Defendant Stanton "participated" in the meeting in which Plaintiff was advised that she was being reclassified as "non-exempt" because of a "new law," and (2) Defendant Stanton told Plaintiff, after the meeting, that she would "see what she could do" about getting

Plaintiff paid for the overtime she had worked over the prior years. (Dkt. No. 12, Attach. 1, at ¶ 12-14, 16 [Wallace Aff.].) More important, Plaintiff has adduced evidence that Defendants both essentially controlled Plaintiff's compensation or salary (thus possessing the ability to pay her a raise or bonus equaling her alleged overtime, regardless of her classification). (Dkt. No. 12, Attach. 1, at ¶¶ 23-24, 34 [Wallace Aff.].) Because of the fact that conflicts between evidence must be construed in a plaintiff's favor (*see, supra,* Part II of this Decision and Order), the Court finds that this evidence adduced by Plaintiff constitutes a sufficient ground on which to reject Defendants' agency-theory argument.

Moreover, Defendants argue that Plaintiff has been unable to make a prima facie showing that Defendants' activities in New York State were for their own personal benefit. However, both Defendants supervised the media division, in which Plaintiff worked. (Dkt. No. 12, Attach. 1, at ¶¶ 1, 5, 17, 21-37 [Wallace Aff.]; Dkt. No. 10, Attach. 2, at ¶¶ 4-5 [Stanton Aff.].) Indeed, Plaintiff was so involved in coordinating Defendant Stanton's daily schedule (e.g., assisting her in special projects and arranging all of her travel) that Plaintiff enabled Defendant Stanton to live in, and work from, South Carolina (a benefit previously not enjoyed by a Vice President of Media Services). (Dkt. No. 12, Attach. 1, at ¶¶ 19-20 [Wallace Aff.]; Dkt. No. 10, Attach. 2, at ¶ 6 [Stanton Aff.].)

For all of these reasons, the Court finds that, based on the factual allegations asserted and evidence adduced thus far, Plaintiff has made a prima facie showing that personal jurisdiction is appropriate under an agency theory. However, again, because the Court's finding is based on the above-described factual allegations and evidence, the Court denies this part of Defendants' motion only without prejudice, with leave to renew after discovery is completed.

**C. Whether, in the Alternative, Plaintiff's Claims Against Defendant Calta Should Be Dismissed for Insufficient Service of Process Pursuant to Fed. R. Civ. P. 12(b)(5)**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. *See, supra,* Part I.B. of this Decision and Order. As Plaintiff correctly argued, her service of Defendant Calta was permissible under Fed. R. Civ. P. 4(e)(1) and N.Y. C.P.L.R. § 308(2). The Court notes that Defendants did not even bother to rebut this argument in their reply.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 10) is **<u>DENIED</u> without prejudice**, with leave to renew after discovery is completed; and it is further

**ORDERED** that Defendants file an answer to the Plaintiff's Complaint within 14 days of the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a) and this case is referred back to Magistrate Judge Treece for the setting of pretrial scheduling deadlines.

Dated: July 2, 2013
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge